**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

**Cheetah Omni LLC,**

*Plaintiff*,

vs.

**Alcatel-Lucent USA Inc.**, *et al.*

*Defendants*.

HONORABLE TIMOTHY B. DYK

Case No. 6:11CV390

JURY TRIAL DEMANDED

# CHEETAH OMNI LLC'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON EQUITABLE ISSUES OF LACHES AND ESTOPPEL



## INTRODUCTION

Cheetah presents proposed findings of fact and conclusions of law on Tellabs' defenses of laches and equitable estoppel. As to Tellabs' laches defense, Cheetah's alleged delay in filing suit was less than three months – a small fraction of the presumptive six-year window for filing suit. Given that Cheetah was trying its case against Verizon Services Corporation ("Verizon") at the time it first learned about Tellabs' infringement of the patents-in-suit, Cheetah's three month "delay" was entirely reasonable.

Tellabs cannot prevail on its equitable estoppel claim either. Cheetah never gave Tellabs any indication that Cheetah would not pursue Tellabs for infringement of the patents-in-suit. As a result, Tellabs did not take any action in response to Cheetah's non-existent allegation of infringement.

Finally, Tellabs has not been harmed, and cannot make the required showing of prejudice, due to any action it claims to have taken.





## FINDINGS OF FACT FOR LACHES AND ESTOPPEL

### A. Cheetah Did Not Know That Tellabs' ROADMs Included LC-based WSSs Prior to Cheetah's Trial against Verizon In March 2011

1. When Cheetah initially contacted Tellabs in 2005, Cheetah understood that Tellabs sold ROADMs having a MEMS-based Wavelength-Selective Switch ("WSS"). (*Expected trial testimony*.) Those MEMS-based ROADMs are not relevant to the laches and estoppel issues because Cheetah is not asserting, in this lawsuit, that Tellabs' MEMS-based ROADMs infringe the '459 and '647 patents-in-suit.

2. Cheetah had no knowledge that Tellabs used any other type of WSS in its ROADM products including the Liquid Crystal ("LC")-based WSSs that infringe the patents-in-suit, until 2011. (*Expected trial testimony*.)

3. In March 2011, Cheetah tried a patent infringement case against Verizon Services Corporation, asserting U.S. Patent No. 7,532,836 against Verizon's "Fiber-To-The-Home" ("FTTH") technology. (*Expected trial testimony*.) Verizon's FTTH technology included, *inter alia*, Tellabs ROADMs. (*Expected trial testimony*.) On March 16, 2011, during trial, Tellabs added CoAdna's U.S. Patent No. 7,492,986 to its exhibit list. (*Expected trial testimony*.) The '986 patent had never been disclosed to Cheetah before that date. (*Expected trial testimony*.)

4. Verizon asserted at trial that the '986 patent described the operation of CoAdna's LC-based WSS. (Verizon Trial, 3/16/11 Morning Tr., p. 31, line 19 - p. 32, line 2.)

5. Cheetah did not know that the CoAdna LC-based WSSs supplied to Tellabs in this case infringed the '647 and '459 patents until after Cheetah learned of the '986 patent on





March 16, 2011, and after Cheetah had the time to study the '986 patent and compare that technology to the claims of the patents-in-suit. (*Expected trial testimony*.)

6. The Verizon case ended on March 18, 2011. Post-trial briefing in the Verizon case did not end until June 14, 2011 – after Cheetah had filed suit against Tellabs. (*Expected trial testimony*.) Cheetah did not delay unreasonably after learning, in March 2011, of Tellabs' use of LC-based WSSs in its ROADMs.

### B. Prior to Its Complaint against Tellabs in June 2011, Cheetah Had Never Accused Tellabs of Infringement of the '647 or '459 Patents

7. Prior to its complaint against Tellabs on June 3, 2011 in Michigan, Cheetah had never accused Tellabs of infringing Cheetah's '647 or '459 patents. (*Expected trial testimony*.) Cheetah has never given Tellabs any reason to believe that Cheetah would not assert the '647 or '459 patents against Tellabs. (*Expected trial testimony*.) Tellabs has never relied on any action by Cheetah that would be sufficient to prove estoppel. (*Expected trial testimony*.)

8. Tellabs has no evidence of any prejudice of the type required for proof of laches or estoppel. (*Expected trial testimony*.)





## CONCLUSIONS OF LAW FOR LACHES AND ESTOPPEL

### A. No Laches: Cheetah's Decision to File Suit against Tellabs Just Three Months after Learning about the CoAdna WSS in Tellabs' ROADM Products during the Verizon Trial Was Not an Unreasonable Delay

1. To invoke the laches defense, Tellabs has the burden to prove [1] that Cheetah delayed filing suit for an unreasonable and inexcusable length of time from the time Cheetah knew or reasonably should have known of its claim against Tellabs, and [2] the delay operated to the prejudice or injury of Tellabs. *AC Aukerman Co. v. RL Chaides Const. Co.*, 960 F. 2d 1020, 1032 (en banc) (Fed. Cir. 1992).

2. A presumption of laches only arises from a more than six-year delay in filing suit from the time Cheetah knew or should have known that Tellabs infringed the '647 and '459 patents. *Id.* at 1034-1035.

3. Material prejudice to Tellabs resulting from Cheetah's alleged delay is essential to Tellabs' laches defense. Damages or monetary losses attributable to a finding of liability for infringement do not qualify as material prejudice. *Id.*, at 1033.

4. The court must consider and weigh any justification Cheetah offers for the alleged delay. Cheetah's involvement in other litigation is an accepted justification for delay in bringing suit. *Id.* at 1033.

5. Cheetah has not delayed filing suit for an unreasonable or inexcusable length of time. Cheetah first learned of the existence of the CoAdna WSSs in Tellabs' ROADM products, and how those WSSs operated, during the Verizon trial in March 2011.





6. Because Cheetah was unaware of the existence of the CoAdna WSSs in Tellabs' ROADMS, and how those devices operated, Cheetah could not possibly have known about its claim against Tellabs before March 2011.

7. Less than three months later, Cheetah filed suit against Tellabs for infringement of the '647 and '459 patents on June 3, 2011.

8. Cheetah's alleged delay in not filing suit against Tellabs for infringement of the '647 and '459 patents was not unreasonable and does not constitute laches.

**B. No Equitable Estoppel: Cheetah Never Accused Tellabs of Infringement of the '647 Or '459 Patents, or Gave Tellabs an Indication It Would Not Be Sued Under Those Patents**

9. "An [equitable] estoppel case . . . has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *AC Aukerman Co.*, 960 F. 2d at 1041.

10. The first element of equitable estoppel concerns the statements or conduct of the patentee, which must "communicate something in a misleading way." The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. *Id.*, at 1042.





11. Under the second element, the accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action. To show reliance, the infringer must have had a relationship or communication with the plaintiff that lulls the infringer into a sense of security in going ahead with infringing activities. *Id.*, at 1042-1043.

12. Prior to filing suit against Tellabs, Cheetah had no communication with Tellabs that could have supported an inference that Cheetah did not intend to press an infringement claim against Tellabs under the '647 and '459 patents. Similarly, Tellabs had no basis to know or reasonably infer that Cheetah had known of Tellabs infringement of the '647 and '459 patents. Thus, Tellabs cannot meet the first element of equitable estoppel.

13. Tellabs has not shown that, in fact, it substantially relied on allegedly misleading conduct of Cheetah in connection with taking some action. No action by Cheetah has acted to lull Tellabs into a sense of security in going ahead with its infringing activities. Thus, Tellabs cannot meet the second element of equitable estoppel.

14. Finally, Tellabs has not shown material harm of the type required to prove estoppel. As with laches, damages from infringement liability are not the type of material harm that may give rise to equitable estoppel. Accordingly, Tellabs cannot meet the third element of equitable estoppel.



B|K

Dated: January 16, 2014

Respectfully submitted,

By: /s/Thomas A. Lewry
Thomas A. Lewry (MI Bar No. P36399)
(Lead Attorney)
John S. Le Roy (MI Bar No. P61964)
Robert C.J. Tuttle (MI Bar No. P25222)
John M. Halan (MI Bar No. P37616)
Christopher C. Smith (MI Bar No. P73936)
**Brooks Kushman P.C.**
1000 Town Center, 22nd Floor
Southfield, Michigan 48075-1238
Tel: (248) 358-4400 – Fax: (248) 358-3351
Email: tlewry@brookskushman.com
jleroy@brookskushman.com
rtuttle@brookskushman.com
jhalan@brookskushman.com
csmith@brookskushman.com

T. John Ward, Jr. (TX State Bar No. 00794818)
Jack Wesley Hill
**Ward & Smith Law Firm**
1127 Judson Road, Suite 220
PO Box 1231
Longview, Texas 75606
Tel: (903) 757-6400 – Fax: (903) 757-2323
Email: jw@jwfirm.com
wh@jwfirm.com

Eric Miller Albritton
**Albritton Law Firm**
PO Box 2649
111 West Tyler, 75601
Longview, TX 75606
Tel: (903) 757-8449 – Fax: (903) 758-7397
ema@emafirm.com





## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on **January 16, 2014**.

/s/ Thomas A. Lewry



